UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

SECOND CHANCE BODY ARMOR, INC.
n/k/a SCBA LIQUIDATION, INC.,

Case No: GT 04-12515
Chapter 7

Debtor.

_____/

JAMES W. BOYD, TRUSTEE FOR SECOND
CHANCE BODY ARMOR, INC.,

Plaintiff and Counter-Defendant,

Adversary Proceeding
No. 05-80019

v.

TOYOBO AMERICA, INC.,
TOYOBO CO., LTD., YOSHINARI OHIRA,
TADAO KUROKI, and MASAKAZU SAITO,

Defendants and Counter-Plaintiffs.

_____/

## OPINION DENYING MOTIONS FOR SUMMARY JUDGMENT

Appearances:

James J. Parks, Esq., Mark Cooper, Esq., and Benjamin J. McCracken, Esq., Jaffe, Raitt,
    Heuer & Weiss, P.C., Southfield, Michigan, attorneys for James W. Boyd, Chapter
    7 Trustee.

Donald A. Snide, Esq., Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids,
    Michigan, Konrad L. Cailteux, Esq., Debra A. Dandeneau, Esq., Arvin Maskin, Esq.,
    Michael J. Lyle, Esq., David R. Singh, Esq., Isabella C. Lacayo, Esq., and
    Christopher Barraza, Esq., Weil, Gotshal & Manges LLP, New York, New York, and
    William A. Sankbeil, Esq., and Fred K. Herrmann, Esq., Kerr, Russell & Weber,
    PLC, Detroit, Michigan, attorneys for Toyobo Co., Ltd., Toyobo America, Inc.,
    Masakazu Saito, Tadao Kuroki, and Yoshinari Ohira.

## I. FACTS AND PROCEDURAL HISTORY.

There are very few undisputed facts in this adversary proceeding. Prior to its bankruptcy filing, Second Chance Body Armor, Inc. ("Second Chance") was a leading producer of ballistic resistant products, including concealable body armor, often referred to as bullet resistant vests. Toyobo, Ltd. is a Japanese corporation that manufacturers, markets and sells polymer fibers and fabrics, including Zylon or "PBO." Toyobo America, Inc., is a New York corporation and a wholly-owned subsidiary of Toyobo, Ltd. (collectively "Toyobo"). Masakazu Saito, Tadao Kuroki, and Yoshinari Ohira (the "Individual Defendants") are residents of Osaka, Japan and are employees of Toyobo (the Individual Defendants and Toyobo are collectively referred to as the "Toyobo Defendants"). This dispute generally arises from Second Chance's use of Zylon in its bullet resistant vests and subsequent allegations that the Zylon-containing vests did not perform as well as might have been expected.

On March 3, 2004, the National Association of Police Organizations, Thomas Callahan, and the Fort Myers Police Department (collectively the "State Court Plaintiffs") filed a lawsuit against Second Chance and Toyobo in the Circuit County Court for the County of Antrim, Michigan (the "State Court Lawsuit"). The State Court Plaintiffs alleged that the Zylon-containing vests produced by Second Chance did not provide the necessary level of protection for the entire duration of Second Chance's five-year warranty period. On April 27, 2004, Second Chance filed a cross-complaint against Toyobo. The cross-complaint alleged that the durability issues with Second Chance's vests were caused by

2

defects in the Zylon produced by Toyobo and the asserted unexpectedly rapid degradation of Zylon under certain conditions.

Second Chance filed a voluntary chapter 11 petition on October 17, 2004, and shortly thereafter, Toyobo removed the State Court Lawsuit to this bankruptcy court. After the removal, Second Chance and Toyobo resolved the dispute with the State Court Plaintiffs. Second Chance's chapter 11 case was ultimately converted to chapter 7, and James W. Boyd was appointed as the Chapter 7 Trustee (the "Trustee").

The Trustee filed his Third Amended Complaint in this adversary proceeding on December 12, 2008. The Third Amended Complaint alleges fourteen separate counts against Toyobo and the Individual Defendants. Although the parties differ somewhat in their characterization of the Trustee's allegations, the Third Amended Complaint generally alleges that the Zylon fiber marketed and produced by Toyobo was defective and not fit for use in ballistic vests. The Trustee further asserts that Toyobo was aware of Zylon's defects and that its misrepresentations and breaches of warranty caused damage to Second Chance, including the company's ultimate economic demise.

The remaining considerable facts in this adversary proceeding are heavily disputed. But for similarities in the time line, names, and technical terms, it is often difficult to recognize the factual pictures painted by parties' pleadings as having derived from a common set of transactions and occurrences. Indeed, based upon characterizations in the pleadings, one is hard-pressed to recognize that the parties are assessing the same facts. Although some of the factual disputes are based on unimportant and subtle distinctions, the court finds that many of the material facts in this adversary proceeding are subject to genuine dispute.

3

The parties have filed several dispositive motions which are the subject of this memorandum opinion.  First, on April 23, 2009, the Trustee filed a motion for partial summary judgment on the express warranty claims in Count III of the Third Amended Complaint.  (Dkt. 304.)  Also on April 23, 2009, the Toyobo Defendants filed a motion for summary judgment on the fraud claims in Counts IV through IX of the Third Amended Complaint.  (Dkt. 305.)  Thereafter, on May 22, 2009, Toyobo filed a reply to the Trustee's motion on the express warranty claims and a cross motion for summary judgment on those claims.  (Dkt. 316.)  Toyobo also filed a motion for summary judgment on the implied warranty claims in Counts I and II of the Third Amended Complaint on May 22, 2009.  (Dkt. 317.)  Finally, on July 14, 2009, Toyobo filed a motion for summary judgment on the breach of contract claims in Count X of the Third Amended Complaint.  (Dkt. 326.)  The parties have submitted lengthy responses and replies to the respective motions for summary judgment.

Because the issues presented in the motions have been thoroughly addressed in the various written pleadings and briefs, the court finds that, in this instance, oral argument on the motions would not aid in the decisional process.[1]  Cf. Fed. R. Bankr. P. 8012 (When deciding bankruptcy appeals, the appellate court may forego oral argument if "the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.").  Therefore, the court did not schedule the motions for oral argument and instead determined to issue this written

---

[1] In fact, argument might unnecessarily delay the thirty-one day trial that has recently been scheduled.

4

opinion.[2] See L.R. 7.2(d) (W.D. Mich.) (The court, in its discretion, "may schedule oral argument or may dispose of the motion without argument at the end of the briefing schedule.").

## II. JURISDICTION.

The court has subject matter jurisdiction over this bankruptcy case and this adversary proceeding. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D. Mich.). The Trustee's claims against Toyobo are core proceedings. See 28 U.S.C. § 157(b)(2)(A) and (O). The Trustee's claims against the Individual Defendants are non-core "related" proceedings. See 28 U.S.C. § 157(c)(1). However, all parties have consented to the entry of final orders and judgments by this court with regard to the claims against the Individual Defendants. See 28 U.S.C. § 157(c)(2); Trustee's Third Amended Complaint, Dkt. 286, ¶ 24; Toyobo's Answer to Third Amended Complaint, Dkt. 288, ¶ 22. Somewhat surprisingly, no defendant has requested trial by jury and a bench trial will take place.

## III. ISSUES.

The issues presented are: (1) whether the Trustee is entitled to summary judgment on the express warranty claims asserted in Count III of the Third Amended Complaint; (2) whether Toyobo is entitled to summary judgment on the express warranty claims

---

[2] However, at a status conference with the parties on September 8, 2009, the court announced its opinion so the parties would not be adversely affected in their trial preparations.

asserted in Count III of the Third Amended Complaint; (3) whether Toyobo is entitled to summary judgment on the implied warranty claims asserted in Counts I and II of the Third Amended Complaint; (4) whether Toyobo is entitled to summary judgment on the breach of contract claims asserted in Count X of the Third Amended Complaint; and (5) whether the Toyobo Defendants are entitled to summary judgment on the fraud claims asserted in Counts IV through IX of the Third Amended Complaint.

## IV. DISCUSSION.

### A.  Summary Judgment Standard.

The motions for summary judgment in this adversary proceeding are governed by Federal Rule of Civil Procedure 56(c), made applicable to this case by Federal Rule of Bankruptcy Procedure 7056.  Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  Under this standard, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Browning v. Levy, 283 F.3d 761, 769 (6th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505 (1986)).

When reviewing a motion for summary judgment, the court must construe "the evidence, all facts, and any inferences that may be drawn from the facts . . . in the light most favorable to the nonmoving party." Poss v. Morris (In re Morris), 260 F.3d 654, 665 (6th Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

6

587, 106 S. Ct. 1348 (1986)). The moving party has the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). If that burden is met, the nonmoving party must then produce evidence that would support a finding in its favor. Anderson, 477 U.S. at 250-52. The inquiry is thus a "threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. Summary judgment is only appropriate "if after reviewing the record as a whole a rational factfinder could not find for the nonmoving party." See Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 349 (6th Cir. 1998) (citing Matsushita Elec., 475 U.S. at 587).

This standard also applies when the parties have submitted cross motions for summary judgment. B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001). The court must review the evidence for genuine issues of material fact and "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Taft Broadcasting Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991) (citation omitted). Denial of one party's motion for summary judgment does not automatically compel the conclusion that the other party is entitled to summary judgment. See B.F. Goodrich Co., 245 F.3d at 593.

Finally, this court recognizes that summary judgment may be a useful procedural tool for "weed[ing] out frivolous lawsuits and avoid[ing] wasteful trials." See Barrett v. Harrington, 130 F.3d 246, 251 n.5 (6th Cir. 1997) (quoting 10A Charles Alan Wright, Arthur

7

R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2727 at 35 (1996)). However, *the Supreme Court has also instructed trial courts to act with caution in granting summary judgment motions* and has stated that *a trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial."* Anderson, 477 U.S. at 255 (emphasis added). Although the standards for granting summary judgment apply with equal force to both simple and complex cases, this court is cognizant of the potentially serious pitfalls and missteps that may result from deciding complicated issues, like those presented in this adversary proceeding, on a summary judgment record.[3]

---

[3] In Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031 (1948), the Supreme Court showed a similar reluctance to decide an important and complicated case on a summary judgment record. Kennedy involved issues regarding the application of the overtime provisions of the Fair Labor Standards Act to employees of a government-owned plant that produced munitions during World War II. After discussing the myriad issues presented in the case and their potential import (the Court noted that its decision would likely have a direct impact on all war-time contractors and their employees), the Supreme Court stated:

> [S]ummary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice.

> We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide.

Kennedy v. Silas Mason Co., 334 U.S. at 256-57. Although Kennedy is an older decision, and the issues presented in this adversary proceeding are admittedly not as far-reaching as those involved in Kennedy, the court believes that the reservations regarding use of

8

B. Express Warranty Claims.

In Count III of the Third Amended Complaint, the Trustee alleges that Toyobo made and breached various express warranties regarding the characteristics and expected performance of Zylon. Under Michigan law,[4] the creation of express warranties is governed by Mich. Comp. Laws Ann. § 440.2313, which states:

> (1) Express warranties by the seller are created as follows:
>
>> (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>>
>> (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>>
>> (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. . . .

Mich. Comp. Laws Ann. § 440.2313. Although Michigan's version of the Uniform Commercial Code ("U.C.C.") does not provide a specific procedure for disclaiming or

---

summary procedures expressed by the Supreme Court are also instructive in the present case.

[4] The parties agree that this adversary proceeding is governed by Michigan law. See Toyobo Defendants' Memorandum of Law in Support of Motion for Summary Judgment on Fraud Claims (Dkt. 306 & 307); Trustee's Brief in Support of Motion to Amend Complaint (Dkt. 144). Based upon the record, the court also agrees that Michigan law applies.

9

excluding express warranties, it states that: "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but . . . [the] negation or limitation is inoperative to the extent that such construction is unreasonable." Mich. Comp. Laws Ann. § 440.2316(1); see Fargo Machine & Tool Co. v. Kearney & Trecker Corp., 428 F. Supp. 364, 371 (E.D. Mich. 1977).

The Trustee alleges that Toyobo made various express warranties about Zylon throughout its business relationship with Second Chance. For ease of reference, the Trustee has grouped these alleged express warranties into five general categories: (1) warranties that Zylon was superior in many ways to p-Aramid (Kevlar); (2) warranties that Zylon would provide higher ballistic performance fabrics for body armor than p-Aramids (Kevlar); (3) warranties that Zylon could be used in ballistic vests; (4) warranties that Zylon could be used to make high strength, light weight, and comfortable fabric for protective garments; and (5) warranties that Zylon fibers were dimensionally stable against humidity. The Trustee cites several specific representations allegedly made by Toyobo in each of these five categories.

Overall, Toyobo does not dispute that it made the *statements* cited by the Trustee. It does, however, deny that the statements gave rise to express warranties under Michigan law. To the contrary, Toyobo argues that the statements cited by the Trustee were merely statements of opinions, beliefs and so-called "puffery." Toyobo says factual questions as to whether such statements formed the "basis of the bargain" between Toyobo and Second Chance exist. In its cross motion for summary judgment, Toyobo also asserts that the Trustee's express warranty claims fail as a matter of law for a number of reasons. First,

10

Toyobo argues that a confidentiality agreement between Second Chance and Toyobo, which was in effect from August 7, 1996 to September 30, 1998, precludes any express warranty claims based on information provided to Second Chance before October 1, 1998. Next, Toyobo argues that it disclaimed any express warranties on Zylon in the technical brochures that contained many of the warranties cited by the Trustee.  Third, Toyobo asserts that statements in the "whereas" clauses of the Volume Rebate Agreements between Toyobo and Second Chance were not express warranties.  Fourth, Toyobo contends that any express warranty claims that accrued before April 21, 2000 are barred by the applicable statute of limitations.  See Mich. Comp. Laws Ann. § 440.2725(1)-(2) (actions for breach of warranty must be commenced within four years after tender of delivery).  Finally, Toyobo argues that any claims for breach of express warranties pertaining to purchases of Zylon after July 5, 2001, fail as a matter of law because Toyobo notified Second Chance about Zylon's potential durability issues in a letter dated July 6, 2001.

The Trustee counters each of the arguments raised by Toyobo.  First, the Trustee asserts that the alleged disclaimers in the 1996 confidentiality agreement applied only to experimental Zylon fiber, and not to commercialized Zylon fiber.  The Trustee also claims that the confidentiality agreement did not negate the express warranties given by Toyobo to Second Chance prior to the execution of the agreement.  Next, the Trustee argues that Toyobo's purported disclaimers were not sufficient to negate the express warranties Toyobo provided on Zylon under Michigan law.   Third, the Trustee argues that the statements in the "whereas" clauses were affirmations of fact or promises under applicable Michigan law.  Fourth, the Trustee claims that Toyobo's argument regarding the applicable statute of

11

limitations is incorrect because Toyobo expressly warranted the future performance of Zylon. Finally, the Trustee argues that the statements in the July 6, 2001 letter from Toyobo merely identified a possible breach of warranty by Toyobo and reaffirmed existing express warranties on Zylon.

The court has carefully considered the parties' arguments regarding Toyobo's alleged express warranties of the Zylon fibers, and finds that there are material issues of fact that preclude the entry of summary judgment in favor of either party on the express warranty claims. The court believes it would be improper to attempt to assess whether individual statements made by Toyobo constituted express warranties without a fully developed factual record to provide context for such statements. Likewise, the court believes that the purported disclaimers identified by Toyobo, and the various other arguments raised in its cross-motion, must be considered in light of the facts and circumstances surrounding Toyobo's overall business relationship and conduct with Second Chance. The court finds that these factual disputes could reasonably be resolved in favor of either party. Therefore, these issues require a trial on the merits, with *all* relevant facts being considered in their totality with appropriate weight given to each fact. Comprehensive findings of fact and conclusions of law will be made after proofs are closed at trial.

### C. Implied Warranty Claims.

In Counts I and II of the Third Amended Complaint, the Trustee asserts that Toyobo breached the implied warranty of merchantability and the implied warranty of fitness for a particular purpose when it sold the allegedly defective Zylon to Second Chance. Michigan law implies a warranty of merchantability in commercial contracts for sale, unless such

12

warranty is excluded by the parties. Fargo Machine & Tool Co. v. Kearney & Trecker Corp., 428 F. Supp. 364, 371 (E.D. Mich. 1977); see Mich. Comp. Laws Ann. § 440.2314(1). The Michigan U.C.C. "provides that to be merchantable, goods must at least be such as pass without objection in the trade under the contract description and must be fit for the ordinary purposes for which such goods are used." Fargo Machine & Tool Co., 428 F. Supp. at 371; see Mich. Comp. Laws Ann. § 440.2314(2)(a) & (c).

In addition to the implied warranty of merchantability, which warrants that goods are fit for the *ordinary* purpose for which such goods are used, Michigan law also implies a warranty that the goods are fit for a *particular* purpose under certain conditions. See James J. White & Robert S. Summers, Uniform Commercial Code § 9-15 (5th ed. 2009). Michigan's version of the U.C.C. provides:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified [under Mich. Comp. Laws Ann. § 440.2316] an implied warranty that the goods shall be fit for such purpose.

Mich. Comp. Laws Ann. § 440.2315.

The Michigan statutes also provide for exclusion or modification of these implied warranties in certain instances. The Michigan U.C.C. states that the implied warranty of merchantability may be excluded or modified by language that mentions merchantability and, in case of a writing, is conspicuous. Mich. Comp. Laws Ann. § 440.2316(2). The implied warranty of fitness for a particular purpose may also be excluded or modified if the exclusion is in writing and is conspicuous. Id. "Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'" Id. The Michigan U.C.C. further provides:

13

(3) Notwithstanding subsection (2):

> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
>
> (b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and
>
> (c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade . . . .

Mich. Comp. Laws Ann. § 440.2316(3).

Toyobo argues that all implied warranties pertaining to Zylon were excluded by various means set forth in the statute. Toyobo asserts that the "usage of trade" in the body armor industry was to exclude implied warranties and that Second Chance was aware of this industry practice.[5] Toyobo further argues that its interactions with Second Chance from the time of the confidentiality agreement in September 1996 to the commercialization of Zylon in October 1998 established a "course of dealing" and a common understanding that Toyobo provided no warranties on Zylon.[6] Toyobo also contends that it consistently

---

[5] The Michigan U.C.C. defines "usage of trade" as "any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such as usage are to be proved as facts" Mich. Comp. Laws Ann. § 440.1205(2).

[6] Under the Michigan U.C.C., a "course of dealing" is "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Mich. Comp. Laws Ann. § 440.1205(1).

14

excluded all warranties on Zylon throughout its business relationship with Second Chance, such that exclusion of the implied warranties was established through a "course of performance."[7]

The Trustee disputes each argument raised by Toyobo. The Trustee denies that Toyobo has presented sufficient evidence to establish that there was a "industry practice" regarding the warranty of "super fibers" in the ballistic armor industry. The Trustee further asserts that a mutual understanding of such trade usage was never present between Toyobo and Second Chance. With regard to the "course of dealing," the Trustee argues that this applies only to past transactions between the parties and states that Toyobo and Second Chance never did business prior to the purchases of Zylon that form the basis of the present dispute. Finally, the Trustee denies that a "course of performance" was established between the parties. The Trustee asserts that "course of performance" can not be established by communications alone and that Second Chance never acquiesced to any pattern of behavior or attempted exclusion of warranties by Toyobo.

In addition to its arguments about "usage of trade," "course of dealing," and "course of performance," Toyobo also alleges that it excluded implied warranties on Zylon by various other methods. For instance, Toyobo states that it repeatedly told Second Chance – in the 1996 confidentiality agreement, during the commercialization of Zylon, and in subsequent correspondence – that it made no warranties in connection with the use of

---

[7] The Michigan U.C.C. provides: "Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." Mich. Comp. Laws Ann. § 440.2208(1).

15

Zylon in Second Chance's vests. Toyobo claims that it repeatedly told Second Chance to test Zylon for itself to make sure it was suitable for use in Second Chance's products. According to Toyobo, Second Chance heeded this advice, tested Zylon throughout its relationship with Second Chance and determined to continue using Zylon in its vests. Under these circumstances, Toyobo argues that no warranties should be implied. See Mich. Comp. Laws Ann. § 440.2316(3)(b) ("[W]hen the buyer before entering into the contract has examined the goods . . . as fully as he desired or has refused to examine the goods there in no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him . . . .").

The Trustee counters these assertions by distinguishing Toyobo's purported disclaimers as to Second Chance's end product from disclaimers it might have made about the Zylon fibers themselves. The Trustee also argues that simply telling a purchaser to test a product or materials does not automatically equate to a disclaimer of all implied warranties. Finally, the Trustee asserts that the defects with Zylon were not apparent upon Second Chance's examination of the vests and that the defects could not have been found through examination of the vests because the defects were known only to Toyobo.

Upon careful consideration of the various arguments raised by the parties, the court concludes that there are material issues of fact that preclude entry of summary judgment on the implied warranty counts of the Third Amended Complaint. Although Toyobo points to several statements that, standing alone, may suggest an attempt to disclaim or exclude implied warranties, the court is unable to determine whether these statements were sufficient to exclude all implied warranties on Zylon when placed in the context of the parties' overall business relationship. Without comprehensive factual findings, the court is

16

likewise unable to determine whether Toyobo's purported disclaimer of warranties regarding Second Chance's end product equate to disclaimers of warranties on the Zylon fiber itself; whether the alleged warranties were negated by Second Chance's testing of Zylon (given the corresponding limitations on its ability to conduct certain tests pursuant to various agreements with Toyobo); whether the various purported disclaimers and statements by Toyobo gave rise to a "course of dealing" or "course of performance" that excluded implied warranties; and whether implied warranties are excluded in the body armor industry by "usage of trade" and whether Toyobo and Second Chance mutually understood this practice. The court believes that these factual questions could reasonably be resolved in favor of either party and should only be answered by this court after all facts are heard and considered at trial.

### D.  Breach of Contract Claim.

Toyobo's motion for summary judgment on the breach of contract claim in the Third Amended Complaint describes the Trustee's contract claim as being based on the allegation that Toyobo impliedly warranted that Zylon would remain suitable for use in body armor for the duration of Second Chance's warranty period – i.e., five years. Toyobo asserts that this claim must fail because Michigan law does not recognize implied warranties of future performance. Instead, for such a warranty to arise, Toyobo argues that the seller must explicitly state the duration of the future period during which the product will perform.

The Trustee argues that Toyobo motion for summary judgment mischaracterizes the breach of contract claims. In support of his claim, the Trustee identifies six separate alleged

17

contracts between Toyobo and Second Chance.  The Trustee asserts that each of these contracts contained promises made – and subsequently breached – by Toyobo.

Again, Toyobo's motion for summary judgment on the breach on contract count is denied.  The court finds that there are material issues of fact on this issue.  The court will analyze the alleged contracts identified by the Trustee in the context of the parties' overall business relationship, after making comprehensive findings of fact at trial.

E. Fraud Claims and the Economic Loss Doctrine.

The Toyobo Defendants' motion for summary judgment on the Trustee's fraud claims has two components.  First, the Toyobo Defendants argue that the Trustee's fraud claims are barred by the Economic Loss Doctrine.[8]  Second, the Toyobo Defendants assert that the Trustee's fraud claims fail as a matter of law because the complaint fails to establish that Second Chance reasonably relied on the alleged misrepresentations made by the Toyobo Defendants.

The Economic Loss Doctrine, as applied in Michigan, generally provides that "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." Neibarger v. Universal Cooperatives, Inc., 486 N.W.2d 612, 615 (Mich. 1992) (citations omitted).  Relying on a broad (or perhaps, within the factual context,

---

[8] Although the Toyobo Defendants' Motion for Summary Judgment on the fraud claims was filed on behalf of both Toyobo and the Individual Defendants, it does not distinguish between the two types of claims, nor does it specifically address the Trustee's claims against the Individual Defendants. It is likewise unnecessary for the court to draw such a distinction for purposes of this opinion.

18

expansive) interpretation of this general rule, the Toyobo Defendants assert that the Trustee's fraud claims arise from a commercial relationship, stem solely from allegations that Zylon did not perform as anticipated by Second Chance, and seek damages for the purely economic losses that resulted from these alleged defects. Accordingly, the Toyobo Defendants argue that the Trustee's claims are barred by the Economic Loss Doctrine.

As one would expect, the Trustee advocates a more narrow (or perhaps, within the factual context, restrictive) application of the doctrine. Specifically, the Trustee suggests that the fraud claims in the Third Amended Complaint are independent of the breach of contract claims, and thus qualify for the "fraud in the inducement" exception to the Economic Loss Doctrine. See Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc., 532 N.W.2d 541, 545 (Mich. App. 1995) (explaining that "[f]raud in the inducement presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior[;]" and holding that the Economic Loss Doctrine does not bar claims for fraud in the inducement). The Trustee further asserts that the Economic Loss Doctrine only limits its remedies to those provided under the Michigan U.C.C. and does not prevent the Trustee from bringing a fraud claim within the confines of the U.C.C. According to the Trustee, the U.C.C. specifically contemplates actions for fraud and misrepresentation. See Mich. Comp. Laws Ann. §§ 440.1103 & 440.2721. Finally, the Trustee asserts that, given the gravity of its allegations against the Toyobo Defendants and the potential safety hazard caused by their alleged misrepresentations about Zylon,

19

application of the Economic Loss Doctrine to bar the fraud claims against the Toyobo Defendants would be against public policy.

The court declines to now address the potential scope of this complex and nuanced doctrine based solely on the factual allegations contained in this summary judgment record. Instead, the court will determine the potential application (and, if necessary, the scope) of the Economic Loss Doctrine when making its findings of fact and conclusions of law after trial in this adversary proceeding. Likewise, the court believes that there are factual issues regarding Second Chance's alleged reliance on the alleged misrepresentations by the Toyobo Defendants that preclude the entry of summary judgment on that basis. Accordingly, the Toyobo Defendants' Motion for Summary Judgment on the fraud counts of the Third Amended Complaint is denied.

## V.  CONCLUSION.

For the foregoing reasons, all motions for summary judgment are denied. Separate orders pertaining to each motion shall be entered accordingly.

Dated this 5th day of October, 2009
at Grand Rapids, Michigan

Honorable James D. Gregg
Chief United States Bankruptcy Judge

20