UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

SECOND CHANCE BODY ARMOR, INC.
n/k/a SCBA LIQUIDATION, INC.,

       Debtor.

_____/

Case No: GT 04-12515
Chapter 7

JAMES W. BOYD, TRUSTEE FOR SECOND
CHANCE BODY ARMOR, INC.,

       Plaintiff and Counter-Defendant,

v.

Adversary Proceeding
No. 05-80019

TOYOBO AMERICA, INC.,
TOYOBO CO., LTD., YOSHINARI OHIRA,
TADAO KUROKI, and MASAKAZU SAITO,

       Defendants and Counter-Plaintiffs.

_____/

## MEMORANDUM OPINION DENYING THE TOYOBO DEFENDANTS' (1) MOTION IN LIMINE TO EXCLUDE NATIONAL INSTITUTE OF JUSTICE REPORTS, (2) MOTION TO BAR EVIDENCE OF ZKP DEVELOPMENT UNDER FEDERAL RULE OF EVIDENCE 407, AND (3) MOTION TO REQUIRE THE TRUSTEE TO USE CERTIFIED TRANSLATIONS TO PROVE THE CONTENT OF JAPANESE-LANGUAGE DOCUMENTS

Appearances:

James J. Parks, Esq., Mark G. Cooper, Esq., Benjamin J. McCracken, Esq., and Heather M. Maldegen-Long, Esq., Jaffe, Raitt, Heuer & Weiss, P.C., Southfield, Michigan, attorneys for James W. Boyd, Chapter 7 Trustee.

Donald A. Snide, Esq., Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, Michigan, Konrad L. Cailteux, Esq., Debra A. Dandeneau, Esq., Michael J. Lyle, Esq., David R. Singh, Esq., Eric C. Lyttle, Esq., and Christopher D. Barraza, Esq., Weil, Gotshal & Manges LLP, New York, New York, and William A. Sankbeil, Esq., Kerr, Russell & Weber, PLC, Detroit, Michigan, attorneys for Toyobo Co., Ltd., Toyobo America, Inc., Masakazu Saito, Tadao Kuroki, and Yoshinari Ohira.

## I.  FACTS AND PROCEDURAL HISTORY.

In this adversary proceeding, James W. Boyd, the chapter 7 trustee (the "Trustee") for Second Chance Body Armor, Inc. ("Second Chance") alleges fourteen causes of action, including breach of express warranties, breach of implied warranties, breach of contract and fraud, against Toyobo Co., Ltd., Toyobo America, Inc., and three individual Toyobo employees (collectively, the "Toyobo Defendants" or "Toyobo"). The adversary proceeding generally arises from Second Chance's use of Zylon, a polymer fiber manufactured by the Toyobo Defendants, in its bullet resistant vests and subsequent allegations that the Zylon-containing vests did not perform as well as might have been expected.

Trial of this adversary proceeding commenced on November 9, 2009, and, to date, four days of trial have been held. The court determined to issue this written opinion to address three significant evidentiary issues that have arisen. The facts referred to below are based on the parties' assertions and do not constitute findings of fact in this adversary proceeding.

### A. Motion to Exclude National Institute of Justice Reports.

Prior to the commencement of trial, the Toyobo Defendants filed a Motion in Limine to Exclude The National Institute of Justice's Reports to the Attorney General on the Body Armor Safety Initiative and Advisory Notice Regarding Zylon Fiber (collectively "the NIJ Reports").[1]  (Dkt. 368.)  Oral argument was held on October 30, 2009.  At the conclusion

---

[1] The specific NIJ Reports objected to by the Toyobo Defendants are identified in footnote 1 of Toyobo's Memorandum of Law in Support of Motion in Limine to Exclude the National Institute of Justice's Reports to the Attorney General on the Body Armor Safety Initiative and Advisory Notice Regarding Zylon Fiber.  (Dkt. 369.)

2

of arguments, the court requested supplemental briefs and took the matter under advisement.

The NIJ Reports were prepared after Attorney General John Ashcroft directed the NIJ, a research arm of the U.S. Department of Justice, to investigate the performance of all body armor in November 2003. This directive was prompted by two incidents in which law enforcement officers were shot and wounded while wearing Zylon-containing bullet resistant vests. The resulting investigations conducted by the NIJ have included two phases of used vest testing. The results have been reported in three "Status Reports" and several "Advisory Notices" regarding the safety of Zylon use in soft body armor. The investigations also resulted in various changes to the NIJ's vest certification standards.

The Toyobo Defendants' motion asserts that the NIJ Reports are inadmissible hearsay and do not qualify for the public records and reports exception set forth in Federal Rule of Evidence 803(8). The Toyobo Defendants further argue that the NIJ reports are irrelevant to the extent they relate to vests designed and manufactured by companies other than Second Chance. Finally, the Toyobo Defendants contend that the NIJ Advisory Notices should be excluded from evidence because the prejudice to Toyobo outweighs the Advisory Notices' probative value under Federal Rule of Evidence 403.

B. Motion to Exclude Reference to ZKP Project.

During the fourth day of trial, the Toyobo Defendants bench filed a brief in support of their Motion to Bar Evidence of ZKP Development under Federal Rule of Evidence 407 ("Rule 407"). (Dkt. No. 487.) The term ZKP is an acronym for Zylon "Kaizen" Project, which translated to English means "Zylon Improvement Project" ("ZKP" or "ZKP Project"). (Toyobo Brief at 2, n.2.) Toyobo initiated the ZKP Project in July of 2001, after Dutch State

Mines ("DSM") and other bullet resistant vest manufacturers raised concerns about potential durability issues with Zylon in public statements (sometimes referred to herein as the "DSM announcement"). According to the Toyobo Defendants, the goal of the ZKP Project was "to understand the causes of Zylon strength loss under certain environmental conditions," to make changes in Zylon's production process, and "to develop a new fiber with improved strength retention under certain conditions of heat and humidity." Not surprisingly, the Trustee characterizes the goals of the ZKP Project quite differently. According to the Trustee, the goal of the ZKP was never to create a new fiber, but rather to find immediate and long-term solutions to the strength loss issues that had been discovered in Zylon.

Regardless of the purpose of the project, the Trustee asserts that, in conjunction with the ZKP Project, Toyobo conducted many tests on Zylon and maintained an intranet web-site on which Toyobo scientists and sales representatives discussed problems with Zylon. The Trustee alleges that evidence relating to the ZKP Project is probative of the central issues in this case – specifically, that Toyobo *knew* that Zylon was defective and that it attempted to remedy the defects without disclosing them to customers, including Second Chance. In its present motion, Toyobo argues that the ZKP Project constituted a "subsequent remedial measure" and that, as such, Rule 407 bars use of evidence relating to the ZKP Project for the purpose of showing that Zylon was defective or that Toyobo engaged in culpable conduct, including fraudulent activities. Accordingly, Toyobo seeks to have evidence relating to the ZKP Project excluded under Rule 407.

4

C. Certified Translations.

Also on the fourth day of trial, the Toyobo Defendants filed a brief in support of their contention that the Trustee should be required to use certified translations instead of lay witness deposition testimony to prove the content of Japanese-language documents. (Dkt. No. 489.) Specifically, the Toyobo Defendants object to the Trustee playing videotaped deposition testimony which shows Toyobo witnesses reading excerpts from documents written in Japanese. The Toyobo Defendants assert that the Trustee should be required to provide a certified translation of the documents themselves before such testimony is offered. The Toyobo Defendants allege that to do otherwise violates the "best evidence rule," Federal Rule of Evidence 1002, as well as the rule governing interpreters, Federal Rule of Evidence 604. The Toyobo Defendants further argue that, to the extent the deposition testimony involves witnesses reading excerpts of documents, the testimony should be excluded as "cumulative" or because it will be a "waste of time" under Federal Rule of Evidence 403.

The Trustee's response to the Toyobo Defendants' motion paints markedly different portraits of the depositions of the Toyobo witnesses. In his response, the Trustee explains that the depositions of Japanese-speaking witnesses were translated by a certified, objective, third-party official interpreter. Specifically, during the depositions, the Trustee's attorneys asked witnesses to read portions of documents which were written in Japanese, the witnesses' native language. After the deposed witnesses read the documents aloud in Japanese, the interpreter translated the witnesses' words into English. It is stated that the Toyobo Defendants also hired two independent interpretation checkers to attend and monitor the depositions. These interpretation checkers were to verify the accuracy of the

5

witnesses' testimony regarding the written documents and the translations thereof. The Trustee argues not only that this agreed upon procedure was acceptable under the Federal Rules, but that, to the extent discrepancies arise between a witness's testimony and a subsequent certified translation of the document, the testimony of the witness, who is presumably more knowledgeable about the document and the language contained therein, should be deemed more credible.[2] Notwithstanding the Trustee's assertions that certified translations are not required, the Trustee informed the court, in his written response to the Toyobo Defendants' request and at oral argument, that he is in the process of obtaining certified translations of the relevant documents. It is anticipated that certified translations of documents will be introduced during the course of trial.

Comprehensive oral argument on these motions was held before this court on December 18, 2009. At the conclusion of argument, the court took the matters under advisement.

## II. ISSUES.

The primary issues presented are: (1) whether the NIJ Reports are admissible as public records and reports under the hearsay exception set forth in Rule 803(8)(C); (2) whether the Trustee is barred from introducing evidence relating to the Toyobo Defendants' implementation of the ZKP Project under Rule 407, which excludes evidence of "subsequent remedial measures;" and (3) whether the Trustee must provide certified

---

[2] The Trustee does not ask for a ruling on this issue because no such discrepancy has yet arisen. Therefore, the court believes it is not now necessary to fully consider and determine the issue.

6

translations of Japanese-language documents before offering videotaped deposition

testimony of Toyobo witnesses reading from those documents at trial.  The undersigned

judge has also decided to provide guidance about the asserted "prejudice" and "waste of

time" arguments that it expects will be repeatedly advanced by the Toyobo Defendants as

this adversary proceeding measuredly progresses toward conclusion.[3]


## III. DISCUSSION.

### A.  The NIJ Reports and the Public Records Hearsay Exception.

Federal Rule of Evidence 803(8) sets forth an exception to the general hearsay rule

that out-of-court statements made by a declarant who does not testify at trial may not be

offered to prove the truth of the matters asserted therein.  *See* FED. R. EVID. 801.  Rule

803(8) provides:

> The following are not excluded by the hearsay rule, even though the
> declarant is available as a witness:
>
> (8) **Public records and reports**.  Records, reports, statements, or data
> compilations, *in any form*, of public offices or agencies, setting forth
>
>> (A) the activities of the office or agency, or
>>
>> (B) matters observed pursuant to duty imposed by law as to
>> which matters there was a duty to report, excluding, however,
>> in criminal cases matters observed by police officers and other
>> law enforcement personnel, or
>>
>> (C) *in civil actions and proceedings* and against the
>> Government in criminal cases, *factual findings resulting from
>> an investigation made pursuant to authority granted by law,*

---

[3] Although it is now difficult to predict, trial is scheduled to last approximately twenty-five more days.  However, given the current pace, fifty more days is not unlikely.

7

> unless the sources of information or other circumstances indicate lack of trustworthiness.

FED. R. EVID. 803(8) (emphasis added). This rule "is premised on 'the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record.'" *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir. 1984) (quoting Advisory Committee Note, Rule 803(8)(C)) (additional citation omitted). *"'Admissibility in the first instance' is assumed* because of the reliability of the public agencies usually conducting the investigation, and 'their lack of any motive for conducting the studies other than to inform the public fairly and adequately.'" *Id.* (quoting *Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 613, 618-19 (8th Cir. 1983) (emphasis supplied by this court).

As an initial matter, the court holds that the Trustee has demonstrated that the NIJ Reports meet the prima facie requirements of Rule 803(8)(C). First, the NIJ Reports are "reports of a public agency . . . made pursuant to authority granted by law . . . ." According to its web-site:

> NIJ is the research, development and evaluation agency of the U.S. Department of Justice and is dedicated to researching crime control and justice issues. NIJ provides objective, independent, evidence-based knowledge and tools to meet the challenges of crime and justice, particularly at the state and local levels. NIJ's principal authorities are derived from the Omnibus Crime Control and Safe Streets Act of 1968, as amended (see 42 USC § 3721-3723) and Title II of the Homeland Security Act of 2002.

National Institute of Justice, http://www.ojp.usdoj.gov/nij/about/welcome.htm (last visited Dec. 9, 2009). There is no question that the NIJ is a public government agency that undertook its investigation of soft body armor pursuant to authority granted to it by law.

The NIJ Reports also contain "factual findings" as required by the rule.  The United States Supreme Court has adopted a broad definition of "factual findings" for purposes of Rule 803(8)(C) and has stated that "the requirement that reports contain factual findings bars the admission of statements not based on *factual investigation*." *Beech Aircraft Corp. v. Rainey*, 488  U.S. 153, 169, 109 S.Ct. 439, 449-50 (1988) (emphasis added).  For example, under this standard, the Second Circuit has refused to apply Rule 803(8)(C) to admit a report prepared by a police department's internal affairs bureau where the report merely set forth the beliefs of individual officers as expressed in a series of focus-group discussions. *Ariza v. City of New York*, 139 F.3d 132, 134 (2d Cir. 1998).  The Second Circuit held that the report was a "summary of the attitudes and beliefs of a small group of officers," and was "not the type of factual investigatory report contemplated by Fed. R. Evid. 803(8)(C)." *Id.*  In contrast to the report in *Ariza*, the NIJ Reports in this adversary proceeding do not represent the subjective feelings and beliefs of individual scientists at the NIJ.  Instead, the reports were issued after the NIJ conducted various "factual investigations" involving at least two phases of testing of bullet resistant vests.  Although the Toyobo Defendants have strenuously questioned the methodology and the alleged lack of thoroughness of the NIJ's body armor testing, one must acknowledge that the NIJ Reports are the results of "factual investigations" conducted by the NIJ.

The Toyobo Defendants also repeatedly argue that the reports are inadmissible because they are "riddled with inadmissible subjective opinions and conclusions." However, under the Supreme Court's broad definition of "factual findings," "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion." *Beech Aircraft Corp.*, 488  U.S. at

9

170, 109 S.Ct. at 450; *see also Bank of Lexington & Trust Co. v. Vining-Sparks Securities, Inc.*, 959 F.2d 606, 616 (6th Cir. 1992) ("Opinions, conclusions, and evaluations, as well as facts, fall within the Rule 803(8)(C) exception.").

The Toyobo Defendants' assertion that the NIJ Reports are preliminary or tentative, and thus do not constitute final "factual findings" under the rule, also lacks persuasiveness. In general, "material reflecting preliminary findings, or initial or tentative conclusions that are untested and not fully considered" are not viewed as "factual findings" admissible under Rule 803(8)(C). 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 8:89 (3d ed. 2009) (hereinafter "*Federal Evidence*"). Under this type of assertion, courts have excluded internal memoranda and reports by individual staff members, particularly when the documents were not adopted by the applicable governmental agencies. *See, e.g.*, *Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859 (5th Cir. 1998) (excluding internal memoranda written by individual staff members, which were not adopted by the government agency, because they did not constitute "factual findings" as contemplated by Rule 803(8)(C)); *City of New York v. Pullman, Inc.*, 662 F.2d 910 (2d Cir. 1981) (excluding interim staff report and recommendation that did not reflect findings of agency). The NIJ Reports are much different from these types of internal, interim work-product writings or records because they are the result of scientific studies conducted by the NIJ and then published by the agency for public use or reliance. The court determines that all of the NIJ Reports incorporate the requisite "factual findings" mandated by Rule 803(8)(C). Further, because Rule 803(8) refers to documents "in any form," the court also rejects Toyobo's argument that any NIJ preliminary or initial reports must be excluded from evidence.

10

Because the Trustee has shown that the NIJ Reports meet the threshold requirements of Rule 803(8), the reports are *presumed admissible* unless the Toyobo Defendants, as the parties opposing admission, affirmatively demonstrate that the reports are not trustworthy. *Bank of Lexington*, 959 F.2d at 616 (citing *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978), *cert. denied*, 441 U.S. 933, 99 S.Ct. 2054 (1979)). The Advisory Committee Note to Rule 803 states that the following non-exclusive factors may be considered when determining the "trustworthiness" of a report: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view toward possible litigation. *Beech Aircraft*, 488 U.S. at 168 n.11, 109 S.Ct. at 449 (citing Advisory Committee Note, Rule 803(8)) (additional citations omitted).

This court finds that the NIJ Reports are sufficiently "trustworthy" to be admitted under Rule 803(8)(C). The Attorney General instructed the NIJ to commence an investigation into the reliability of body armor worn by law enforcement personnel soon after two officers were shot and wounded while wearing vests containing Zylon in the summer of 2003. Further, as the research, development and evaluation agency of the U.S. Department of Justice – and the entity that sets the ballistics safety standards for body armor manufacturers – the court must conclude that the investigators at the NIJ have a sufficiently high level of skill and experience to make their reports trustworthy for purposes of Rule 803(8)(C).

Although the Toyobo Defendants attack the NIJ scientists' competency and expertise in used vest testing, Toyobo's seemingly more urgent concern is that it cannot evaluate the NIJ scientists' skill or expertise because their identity and credentials are

11

currently unknown. The Toyobo Defendants assert that the NIJ Reports should therefore be deemed "untrustworthy." This court recognizes that Rule 803(8)(C) does not require the experts who prepare public reports to be available for cross-examination. *See, e.g., Ellis*, 745 F.2d at 302-03; *Kehm*, 724 F.2d at 618 ("[A] party which would exclude evidence falling within the apparent scope of the hearsay exception must make an affirmative showing of untrustworthiness, beyond the obvious fact that the declarant is not in court to testify."). Indeed, to hold otherwise would undermine the entire purpose of the Rule 803(8) exception.

In this sense, application of Rule 803(8)(C) in civil cases differs from its application in criminal cases. A recent decision by the Supreme Court, *Melendez-Diaz v. Mass.,* __ U.S. __, 129 S.Ct. 2527, 2530-31 (2009), illustrates this point. In *Melendez-Diaz*, the Court held that admission of "certificates of analysis" showing a substance seized from the defendant to be cocaine without requiring testimony from the analysts who conducted the testing, violated the defendant's rights under the Sixth Amendment's Confrontation Clause. *Id.* at 2530-31. The Court rejected the argument that the analysts could be excused from testifying because the certificates were admissible public records under Rule 803(8)(C). The Court explained that, like police reports in *criminal cases*, which are specifically excluded from Rule 803(8)(C), the certificates did not qualify as public records under the rule's hearsay exception. Because *Melendez-Diaz* is a criminal case, and thus involves a different application of Rule 803(8)(C) and the additional Confrontation Clause issues, this

**12**

court determines that the holding in *Melendez-Diaz* does not apply in this civil adversary proceeding.[4]

Considering the factor of whether a hearing was held, there is no evidence suggesting that the NIJ typically holds a hearing before reporting the results of its scientific investigations. Therefore, the court declines to deem the NIJ Reports untrustworthy because of a lack of a hearing. Finally, it appears from the timing of the investigation that the reports were prepared to inform law enforcement personnel about a potentially flawed, safety-related product, rather than in anticipation of any future litigation to be initiated by the United States or one of its agencies.

Toyobo's major concern about the asserted lack of trustworthiness of the NIJ Reports appears to be that the methodology and procedures utilized by the NIJ render the results of their investigations untrustworthy. *However, this judge firmly believes that concerns regarding the methodology of the NIJ investigations relate to the eventual weight to be given the NIJ Reports rather than their admissibility.* *Ellis*, 745 F.2d at 303 (Concerns "about the methodology of the studies should have been addressed to the relative weight accorded the evidence and not its admissibility."); *United States v. Davis*, 826 F.Supp. 617,

---

[4] The court notes that a case involving similar issues to those presented in *Melendez-Diaz* is scheduled to be argued before the Supreme Court on January 11, 2010. *See* Supreme Court of the United States Docket, *Briscoe v. Virginia*, http://origin.www.supremecourtus.gov/docket/07-11191.htm (last visited Dec. 29, 2009). As recently reported in the New York Times, the Court may be revisiting *Melendez-Diaz*, *inter alia*, because of practical concerns that have been raised. Adam Liptak, *Justices Revisit Rule Requiring Lab Testimony*, N.Y. Times, Dec. 20, 2009 (noting that critics have called the *Melendez-Diaz* decision "unworkable" and explaining that *Briscoe v. Virginia* "raises questions about how lower courts may carry out" the decision and gives the Court an opportunity to "clarify the ground rules for when and how analysts' testimony must be presented").

624 (D. R.I. 1993) (criticisms "as to minor errors and methodology" of report "do not impugn [its] overall reliability;" concerns may be addressed at trial by attacking weight). The Toyobo Defendants have completely failed to meet their burden to demonstrate lack of trustworthiness. This court finds that the NIJ Reports are trustworthy for purposes of the Rules of Evidence and may be admitted under Rule 803(8)(C).[5] The court reiterates that the reports will be given appropriate weight when the court eventually makes its factual findings at the conclusion of trial.

The court also declines to exclude the NIJ Reports on the alternative bases asserted by the Toyobo Defendants. The NIJ Reports are relevant as defined by Rule 402, and their probative value is not outweighed by the potential asserted prejudice to the Toyobo Defendants under Rule 403. In ruling on prior motions in limine, this court has commented that concerns about confusion of issues and asserted prejudice are significantly reduced when the trial is before a judge, rather than a jury. As the Fifth Circuit Court of Appeals has explained:

> [The] portion of Rule 403 [requiring weighing of probative value against prejudice] has no logical application to bench trials. Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of "unfair prejudice" is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity.

*Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). This court is confident it "can hear relevant evidence, weigh its probative value and reject any

---

[5] The Trustee also argues that the NIJ Reports are admissible under Rule 803(8)(A) and (B). Because the reports are admissible under Rule 803(8)(C), the court will not address the Trustee's alternative arguments for admission of the NIJ Reports.

14

improper inferences." *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994). Accordingly, the Toyobo Defendants' motion to exclude the NIJ Reports under Rules 402 and 403 is denied.[6]

### B. The ZKP Project and Subsequent Remedial Measures.

Federal Rule of Evidence 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

FED. R. EVID. 407. The purpose of this rule is twofold. First, it has been noted that "subsequent remedial measures often are 'not in fact an admission [of negligence or culpable conduct], since the conduct is equally consistent with injury by mere accident or through contributory negligence.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1211 (10th Cir. 2006) (quoting Advisory Committee Note, Rule 407). Perhaps more importantly, the rule is designed "to encourag[e] people to take, or at least not discourag[e] them from taking, steps in furtherance of added safety." *See Bauman v. Volkswagenwerk Aktiengesellschaft*, 621 F.2d 230, 233 (6th Cir. 1980) (quoting Advisory Committee Note, Rule 407). Thus, the rule seeks "to permit people to improve their products without running the risk of increasing their liability in the past." *Id.* For the reasons that follow, the court holds that neither the language of Rule 407 nor its underlying policies require exclusion of

---

[6] The court need not now address any possible authentication issues that may later be raised. *See, e.g.*, FED. R. EVID. 901(b)(7), 902(1), (2), (4), (5).

evidence pertaining to Toyobo's implementation of the ZKP Project in this adversary proceeding.

The first challenge in applying Rule 407 in this adversary proceeding is identifying the "event" that allegedly caused the "injury or harm" and would thereby trigger application of the rule. The dictionary broadly defines the word "event" as "something that happens;" an "occurrence." *Webster's Third New International Dictionary* 788 (1986). However, in practice, Rule 407 is most often invoked in cases involving an accident or some other "event" causing injury to the plaintiff. *See generally* Charles Alan Wright & Kenneth W. Graham, Jr., 23 *Federal Practice & Procedure* § 5283 & n.23 (3d ed. 2009) (explaining that the language of the rule, which refers to "events" and measures which would have made the event "less likely to occur" "does not seem apt" when applied outside of the context of accidental personal injuries – for instance, that the defendant stopped breaching his contracts – but acknowledging that courts have not always made this distinction). Notably, although the Sixth Circuit cases cited in the Toyobo Defendants' legal memoranda involved varying causes of action, all of the cases resulted from easily identifiable accidents or occurences. *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025 (6th Cir. 2003) (action against manufacturer of helicopter landing gear after gear failed, resulting in helicopter crash); *Lazore v. Kentucky Powder Co.*, 178 F.3d 1295, 1999 WL 97248 (6th Cir. Feb. 19, 1999) (action for negligence and other damages against company that illegally sold explosives which were used to make bombs that killed and injured eight individuals); *Polec v. Northwest Airlines, Inc. (In re Air Crash Disaster)*, 86 F.3d 498 (6th Cir. 1996) (action against airline and airplane manufacturer for injuries and deaths caused

**16**

by crash of Northwest Flight 255 in 1987); *Bryan v. Emerson Elec. Co.*, No. 87-6027, 1988 WL 90910 (6th Cir. Sept. 1, 1988) (product liability case for injuries suffered by plaintiff after ladder manufactured by defendant collapsed); *Hall v. Am. Steamship Co.*, 688 F.2d 1062 (6th Cir. 1982) (action against steamship company for injuries sustained by seaman while working on vessel); *Bauman*, 621 F.2d 230 (6th Cir. 1980) (products liability action for injuries suffered in automobile accident where defect in design of door latch allegedly caused door to open prematurely).

Application of the rule outside of the context of a specific accident or occurrence is greatly problematic. As the Trustee argued during his opening statement in this adversary proceeding, this is not a products liability action in which the Trustee seeks to recover for damages suffered as a result of alleged specific instances where Second Chance's vests failed and purchasers or users of the vests were injured. Instead, the Trustee's principal causes of action are for breach of warranty, breach of contract, and fraud.

In another breach of warranty case, *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006), the Fifth Circuit Court of Appeals explained why Rule 407 does not apply under such circumstances. The Brazos River Authority (the "BRA") was responsible for managing and developing water resources in the Brazos River Basin. As part of its duties, it acquired a electrodialysis system from GE Ionics to treat and help reduce the salt content of the water in a local lake. The system was upgraded to improve capacity in 1998 and 1999. After the upgrade, the BRA began experiencing problems with the system. These problems led to decreased water quality and also allegedly resulted in fires at BRA's treatment facilities in June 2001 and March and April 2002. The BRA sued GE Ionics and its contractor under various theories including negligence, breach of implied

17

warranty, breach of contract, and tort (although the tort claims were later dismissed). At trial, the district court excluded documents pursuant to Rule 407 relating to GE Ionics' investigations of problems with, and design changes to, the component parts in its systems.

The Fifth Circuit reversed the trial court's evidentiary ruling. The Circuit explained that the BRA was not seeking "recovery for the damage caused by the fires, but for the failure of the products it purchased to achieve their intended purposes – to desalinate and produce water of acceptable quality." *Brazos River Authority*, 469 F.3d at 428. The Fifth Circuit further noted that:

> [A] product can fail to perform as warranted without necessarily creating an "injury or harm" as contemplated by rule 407. A "lemon" is not necessarily a safety hazard. Further, in a situation in which a "lemon" could present a safety hazard, a party could forego a recovery for that safety-related "injury or harm" and merely seek to recover the benefit of its bargain.

*Id.* In such instances, when recovery is not being sought for an injury or harm caused by a specific event, the "primary rationale underlying rule 407 does not apply." *Id.* "The admission of evidence of changes made merely to improve a product, as distinguished from remedial measures that make an 'injury or harm less likely to occur,' is not barred by the rule."[7] *Id.* Moreover, the Fifth Circuit explained that "Rule 407 only applies when the remedial measure is offered to prove negligence or culpable conduct 'in connection with the event.'" *Id.* at 429. This "reference is to the event that triggered the remedial measure." *Id.* (citing 23 Wright & Graham, *Federal Practice & Procedure* § 5285 (2006)).

---

[7] In this adversary proceeding, one of the Toyobo Defendants' alternative arguments is that the purpose of the ZKP Project was to improve Zylon or make an entirely new and better product.

18

At oral argument regarding the evidentiary motions before this court, the Toyobo Defendants asserted that the "event" in this case was the July 2001 release of the DSM announcement which stated that Zylon might be unsuitable for use in bullet resistant vests. The Toyobo Defendants argue that the DSM announcement set off a chain of events that eventually led to the Trustee's alleged injuries. The court does not believe that the DSM announcement constitutes the type of "event" contemplated by Rule 407. It would be illogical to permit any defendant to identify a long "chain of events" in a commercial relationship, randomly select one occurrence as an the "event" for purposes of Rule 407, and assert that evidence of actions taken after that selected point in time should be barred as subsequent remedial measures.

However, even assuming that the DSM announcement may constitute an operative "event" in this adversary proceeding, Rule 407 does not bar admission of evidence relating to the ZKP Project. The Toyobo Defendants characterize the ZKP Project as a prospective study and investigation into the causes of Zylon's strength loss and an effort to develop a new fiber with improved strength and durability, while simultaneously arguing that the ZKP Project was a subsequent remedial measure with regard to Zylon previously manufactured by Toyobo. This reasoning appears to be internally inconsistent and is unavailing. For purposes of Rule 407, the ZKP Project cannot be both a forward-looking attempt to create a new product and a subsequent measure to address the problems with Zylon identified in DSM announcement. No amount of testing and possible new-product development would have made the DSM announcement – which addressed the suitability of Zylon fiber already being used in body armor – "less likely to occur." Further, as explained by the Fifth Circuit, the rule only bars evidence of remedial measures to prove culpable conduct *in*

19

*connection with the event.* The Trustee is not offering evidence of the ZKP Project to prove Toyobo's culpable conduct in connection with the DSM announcement. Simply stated, Rule 407 does not apply under these circumstances.[8]

Second, the court notes that much of the evidence the Trustee seeks to introduce involving the ZKP Project involves testing and discussions conducted by Toyobo's scientists and other employees, as contrasted to any actual modifications made in Zylon's design or manufacture. The explicit text of Rule 407 generally "only prohibits 'evidence of

---

[8] Given the trial record to date, the court believes it has not yet heard the end of Toyobo's arguments to exclude the ZKP Project evidence. Therefore, the court has determined some additional comments may be helpful.

Although the DSM announcement is the only "event" identified by the Toyobo Defendants, the court notes that other potential "events" present the same inherent problems for purposes of applying Rule 407. To the extent that Toyobo's alleged breaches of warranty or contract are deemed the "events" that trigger application of Rule 407, the court believes the reasoning articulated by the Fifth Circuit in *Brazos River Authority* is compelling. As previously noted, the Trustee's breach of warranty and breach of contract causes of action are not based on any specific instances of vest failure and resultant injury. Rather, the Trustee's actions are primarily based on the Toyobo Defendants' alleged failure to provide a product that was suitable for use in bullet resistant vests and the failure of Zylon to perform as promised. Under such circumstances, evidence of changes made to Zylon subsequent to the alleged breaches of warranty or contract, are not being offered to prove negligence or culpable conduct and may not be excluded on that basis. In addition, it is anomalous to suggest that subsequent changes to Zylon made pursuant to the ZKP Project would have made these alleged prior breaches of warranty or contract "less likely to occur" in the first instance. This type of argument fails to make any sense to this court.

Rule 407 is also inapplicable if the Toyobo Defendants' alleged fraud – that is, their misrepresentations or failure to advise Second Chance of Zylon's degradation issues after they became known to Toyobo – is defined as the "event" triggering application of the rule. First, it is difficult (perhaps impossible) to identify any one such event or occurrence, because the Trustee's complaint alleges that the Toyobo Defendants' fraud was continuing throughout much of the parties' commercial relationship. But more importantly, fraud claims arise at the time a misrepresentation is made or when a duty is disclose is present and disclosure does not occur. Implementation of the ZKP Project, or other possible changes to Zylon after-the-fact, would not make Toyobo's alleged fraud "less likely to occur."

20

. . . subsequent *measures*,' not evidence of a party's *analysis* of its product." *Brazos River Authority*, 469 F.3d at 430 (quoting *Prentiss & Carlisle Co. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6 (1st Cir. 1992)) (emphasis added); *see also Wilson v. Beebe*, 770 F.2d 578, 590 (6th Cir. 1985) (refusing to exclude a report that did *not* recommend changes in procedures under Rule 407). As the Fifth Circuit has further explained:

> The fact that [an] analysis may often result in remedial measure being taken . . . does not mean that evidence of the analysis may not be admitted. This argument is persuasive, because by themselves, post-accident investigations would not make the event "less likely to occur;" only the actually implemented changes make it so.

*Brazos River Authority*, 469 F.3d at 430 (citations omitted). The Toyobo Defendants' attempt to distinguish the ZKP Project from other cases involving study and investigation of alleged product failures by characterizing ZKP as a "prospective" study of Zylon's strength loss, as opposed to a retrospective analysis of what may have gone wrong with the Zylon in the DSM vests. This is a meaningless distinction. Regardless of whether a study is forward-looking or retrospective, analyses by themselves are not "remedial measures" for purposes of Rule 407. Put differently, actions (measures) not words (or brain-storming) govern.

Finally, assuming *arguendo* that this court were to find that the Toyobo Defendants' implementation of the ZKP Project was a "remedial measure" under Rule 407, evidence relating to the project would only be excluded for purposes of establishing a defect in Zylon or "culpable conduct" by the Toyobo Defendants. The court firmly believes that evidence pertaining to the ZKP Project may be offered for other purposes, *e.g.*, to attempt to establish the Toyobo Defendants' knowledge of Zylon's potential defects and/or the

21

Toyobo Defendants' legal obligation to disclose information regarding the possible defects to its customers, including Second Chance. Accordingly, the Toyobo Defendants' motion to exclude evidence pertaining to the ZKP Project must be denied.

### C. Certified Translations.

When the Toyobo Defendants first raised their objection to the Trustee's failure to provide certified translations of Japanese-language documents used in depositions of the Toyobo witnesses, they asserted that such certified translations were required by Federal Rule of Evidence 1002, often referred to as the "best evidence" rule, and Federal Rule of Evidence 604, which governs use of interpreters. At oral argument on the motion, however, counsel for the Trustee advised the court that the Trustee will soon be acquiring certified translations of all Japanese-language documents referred to in the depositions the Trustee intends to offer into evidence. Because the Trustee has agreed to provide the court with certified translations of the documents, the court need not rule on the Toyobo Defendants' assertion that such translations are required under Rule 1002 and 604.

Also during oral argument, after the court learned that the Trustee was in the process of acquiring the certified translations, the Toyobo Defendants shifted the emphasis of their argument and asserted that having the deposition witnesses read the documents into the record would be cumulative of the documents themselves. Therefore, although the Toyobo Defendants did not generally object to admissibility of certified translations of the documents, they argued that the court should exclude the deposition testimony that

22

showed witnesses reading excerpts of the documents as a "waste of time" under Federal Rule of Evidence 403.[9]

The decision to exclude relevant evidence because it is cumulative or a waste of time is within this court's reasonable discretion. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 128 S.Ct. 1140, 1144-45 (2008) (explaining, in an age discrimination case tried before a jury, that a trial court "is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules") (citation omitted); *Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) ("Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power . . . ."). However, this court believes that "the power to exclude evidence under Fed. R. Evid. 403 should be sparingly exercised." 1 *Federal Evidence* § 4:12 (noting that this approach is supported both by the language of Rule 403 and good sense because "in the search for truth much if not most probative evidence could be misused, appeal to emotions, or confuse the factfinder, and *attempts to purify trials by filtering out proof that raises modest risks would likely lead to uninformed and unreliable verdicts*") (emphasis supplied by this court).

This court is unwilling to now conclude, as a general proposition, that the deposition testimony to be offered by the Trustee is cumulative or a waste of time. To the contrary,

---

[9] The court notes that under Federal Rule of Evidence 1007, the "[c]ontents of writings . . . may be proved by the testimony or deposition of the party against whom offered . . . ." FED. R. EVID. 1007. This rule is based on the rationale that, "under our adversary system, *a party should not be heard to object to the reliability of his own statements* since that party can take the stand and explain those statements." 31 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 8054 n.6 (1st ed. 2009) (emphasis added).

23

the court believes that credibility of the Toyobo witnesses may be one of the important factors in this adversary proceeding. The best, indeed perhaps the *only*, way for this court to make credibility determinations is for this court to see and observe the witnesses' demeanor as they respond to questions regarding the various issues and documents in this case. If, as the trial progresses, the deposition testimony becomes cumulative or a waste of time, the court may later exercise its on-going discretion to *sua sponte* exclude the evidence. This judge believes that a pre-emptive and blanket exclusion of the Toyobo witnesses' deposition testimony is unwarranted and improper. (One cannot help but to rhetorically ask: "Is Toyobo trying to hide something or is it stonewalling the truth?" *See* Part D. below.) Accordingly, the Toyobo Defendants' request to exclude the deposition testimony under Rule 403 is denied.

### D. Scope and Construction of the Federal Rules of Evidence: Ascertainment of the Truth.

The scope and purpose of the Federal Rules of Evidence must be considered in any current or future evidentiary objection raised by a party or decided by the court. This scope and purpose is succinctly stated in Federal Rule of Evidence 102:

> These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence *to the end that the truth may be ascertained and proceedings justly determined.*

FED. R. EVID. 102 (emphasis added).

"Relevancy is the threshold determination in any decision regarding the admissibility of evidence; if evidence is not relevant, it is not admissible." *Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 375 (6th Cir. 1983) (citing FED. R. EVID.

24

402).[10] Sometimes, especially in a trial of a lengthy duration such as this one, it may be initially difficult to determine whether testimony or a document will be relevant or not. Put differently, how will the fact-finder know whether a particular piece of information will link with other pieces of information to establish a requisite element of proof or not? When this question arises, Rule 104(b) will assist this court as the fact-finder. The court intends to permit introduction of evidence of problematic relevancy, consider other evidence admitted, and then later determine if the problematic evidence is relevant or not. If not relevant, the evidence will not be utilized in the court's eventual findings to be made at the conclusion of trial. FED. R. BANKR. P. 7052. This is one type of evidentiary "tool" that will assist the court in ascertaining the truth. The difficulty to be encountered shall likely be multiplied because of the large amount of expert opinion testimony that is expected to be brought forth by both parties. Whether expert opinions will be considered and, if so, the weight to be given to those opinions, cannot be determined in the abstract. *Cervelli v. Thompson/Center Arms*, No. C2-99-1409, 2002 WL 193577 at *2 (S.D. Ohio Jan. 28, 2002). This court prefers weighing *all* other admissible evidence before deciding whether a contested item of evidence or a disputed opinion is relevant and weighty or not.

Thus far during trial, the Toyobo Defendants have persistently and combatively sought to prohibit the Trustee from attempting to prove his case.[11] One recurring argument

---

[10] "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.

[11] The court has previously commented, both during pretrial proceedings and during trial, that the Trustee will have difficulty in establishing sufficient cogent evidence to prove any theory of liability raised in the Trustee's amended complaint. Regardless of difficulty, the Trustee is entitled to an opportunity to prove his case notwithstanding Toyobo's

25

asserted by Toyobo is that some of the Trustee's anticipated evidence, even assuming relevancy, should be barred because the evidence is "substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. When considering this argument, whether now or in connection with future evidentiary objections of a similar type or nature, this court will be guided by certain specific principles.

"'Unfair prejudice' as used in rule 403 is not to be equated with testimony that is merely adverse to the opposing party. Virtually all evidence is prejudicial; otherwise it would not be material. The prejudice must be 'unfair.'" *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006) (citing *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977)). This court is given "broad discretion in determining potential prejudice based upon the full array of evidence." *Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 340 (5th Cir. 1980) (citations omitted). "Unfair prejudice . . . does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Pittman*, 129 F. App'x 917, 920-21 (6th Cir. 2005) (citations and internal quotation marks omitted). When a defendant is confronted by its own warnings (or its own knowledge) of a condition of usage of equipment (or perhaps in this proceeding, Zylon fiber), it is unlikely that "unfair prejudice" can be said to exist. *Dollar*, 561 F.2d at 618. To determine whether potentially unfair prejudice outweighs probative value, the evidence must be viewed "in the light most favorable to its proponent giving the evidence its

---

protestations to the contrary.

26

maximum probative force and its minimum reasonable prejudicial value." *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998).

Being guided by these principles, it is less likely that this court shall make an ill-considered evidentiary ruling, thereby excluding relevant evidence, and resulting in eventual reversal. (Regardless of how this adversary proceeding is decided, the losing party will probably lodge an appeal, or cross appeals will be lodged.) A salutary goal of this court is to avoid an extremely lengthy and outrageously costly re-trial because of an evidentiary error.

One last comment. Although the Toyobo Defendants seemingly seek to guard this court's valuable time by excluding evidence as a "waste of time," the court will reject Toyobo's request to exclude evidence to speed up this trial. If and when the court perceives that the presentation of evidence is becoming a waste of time, be assured that both parties will be advised.

This court desires to make its ultimate findings based upon all relevant evidence. Excluding evidence to be expedient is not appropriate. The court will not make any artificial or seemingly arbitrary inferences because the weight of some admitted testimony may be drastically reduced depending on *all* facts in evidence. One of the key issues may be Toyobo's corporate and the individual defendants' decision-making relating to disclosure or nondisclosure of the propensities of Zylon. The court desires to see and hear all witnesses.

## IV.  CONCLUSION.

For the foregoing reasons, the Toyobo Defendants' motions to exclude the NIJ Reports, bar evidence relating to the ZKP Project, and exclude the video-taped deposition

27

testimony of Toyobo witnesses offered by the Trustee are denied.  Further, this court will

consider all future evidentiary objections that may be interposed by any party with the goal

of ascertaining the truth to justly determine the issues raised in this adversary proceeding.

Separate orders shall be entered accordingly.

Dated this 5th day of January, 2010
at Grand Rapids, Michigan

Honorable James D. Gregg
Chief United States Bankruptcy Judge

28