UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

---

In re:

SECOND CHANCE BODY ARMOR, INC.
n/k/a SCBA LIQUIDATION, INC.,

     Debtor.

Case No: GT 04-12515
Chapter 7

_____/

JAMES W. BOYD, TRUSTEE FOR SECOND
CHANCE BODY ARMOR, INC.,

     Plaintiff and Counter-Defendant,

Adversary Proceeding
No. 05-80019

v.

TOYOBO AMERICA, INC.,
TOYOBO CO., LTD., YOSHINARI OHIRA,
TADAO KUROKI, and MASAKAZU SAITO,

     Defendants and Counter-Plaintiffs.

_____/

## MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION FOR CLARIFICATION OF EVIDENTIARY RULING RELATED TO RED YARN

Appearances:

James J. Parks, Esq., Mark G. Cooper, Esq., Benjamin J. McCracken, Esq., and Heather M. Maldegen-Long, Esq., Jaffe, Raitt, Heuer & Weiss, P.C., Southfield, Michigan, attorneys for James W. Boyd, Chapter 7 Trustee.

Donald A. Snide, Esq., Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, Michigan, Konrad L. Cailteux, Esq., Debra A. Dandeneau, Esq., Michael J. Lyle, Esq., David R. Singh, Esq., Eric C. Lyttle, Esq., and Christopher D. Barraza, Esq., Weil, Gotshal & Manges LLP, New York, New York, and William A. Sankbeil, Esq., Kerr, Russell & Weber, PLC, Detroit, Michigan, attorneys for Toyobo Co., Ltd., Toyobo America, Inc., Masakazu Saito, Tadao Kuroki, and Yoshinari Ohira.

## I. INTRODUCTION AND GENERAL BACKGROUND.

In this adversary proceeding, James W. Boyd, the chapter 7 trustee (the "Trustee") for Second Chance Body Armor, Inc. ("Second Chance") alleges fourteen counts against Toyobo Co., Ltd., Toyobo America, Inc., and three individual Toyobo employees (collectively, the "Toyobo Defendants" or "Toyobo"). Specifically, Counts I, II, III and X of the Trustee's Third Amended Complaint assert that Toyobo breached its contract with Second Chance, as well as various express and implied warranties, when it sold Zylon, a polymer fiber, to Second Chance for use in its production of bullet resistant vests. Counts IV through IX of the Third Amended Complaint allege that the Toyobo Defendants committed various types of fraud, misrepresentation, and silent fraud by making inaccurate or untruthful representations or failing to disclose critical information about the durability, performance, degradation, and suitability of Zylon for use in ballistic applications.

Trial of this adversary proceeding commenced on November 9, 2009, and, to date, ten days of trial have been held. Several evidentiary issues have arisen both prior to, and during, the trial. The court has decided some of these evidentiary questions in oral bench opinions, and has also entered a written opinion addressing some of the more complicated and substantial evidentiary issues. *See* Memorandum Opinion Denying the Toyobo Defendants' (1) Motion in Limine to Exclude National Institute of Justice Reports, (2) Motion to Bar Evidence of ZKP Development under Federal Rule of Evidence 407, and (3) Motion to Require the Trustee to Use Certified Translations to Prove the Content of Japanese-Language Documents, dated January 5, 2010 (hereinafter "Memorandum Opinion Regarding Evidentiary Issues"). The court determined to issue this written opinion

2

addressing the admissibility of evidence regarding Toyobo's alleged problems with so-called "red yarn" in its production of Zylon fiber.  The facts referred to below are based on the parties' assertions and do not constitute findings of fact in this adversary proceeding.

## II.  FACTS AND PROCEDURAL HISTORY RELATING TO RED YARN.

On September 11, 2009, prior to the commencement of trial, the Toyobo Defendants filed a Motion to Preclude Testimony and Evidence Related to Red Yarn (the "Motion to Exclude").  (Dkt. 363.)  This motion characterized red yarn as a "nonconformity" that Toyobo periodically observed in the manufacture of Zylon fiber.  (See Toyobo's Brief in Support of Motion to Preclude Testimony and Evidence Related to Red Yarn, Dkt. 396.) The Motion to Exclude explained that red yarn occurred when Zylon fiber came into contact with residual sodium carbonate that occasionally built up on rollers in the drying cabinets used after the neutralization step in the Zylon manufacturing process.  Because there was no evidence that Second Chance had ever used fabric containing red yarn in the manufacture of its bullet resistant vests, Toyobo's motion asserted that evidence relating to red yarn was irrelevant and should be excluded by the court.

The Motion to Exclude was argued before this court on November 9, 2009.  On December 3, 2009, this court entered an Order Denying Toyobo Defendants' Motion to Preclude Testimony and Evidence Regarding Red Yarn.  (Dkt. 491.)  Although the order denied the Toyobo Defendants' request to exclude red yarn evidence in its entirety, the order provided that "before the Trustee can introduce testimony regarding Red Yarn, the Trustee must make a factual showing that Toyobo shipped Zylon to Second Chance that contained Red Yarn and that the Zylon containing Red Yarn was used in a vest or vests

3

manufactured by Second Chance." The court contemplated that, upon the Trustee filing a motion, the court's preliminary ruling would be revisited.

On December 3, 2009, the Trustee filed a Motion for Clarification of the Court Order Related to Red Yarn (the "Motion for Clarification"). (Dkt. 494.)   The Trustee's Motion for Clarification asserted that the original Motion to Exclude applied only to red yarn as it related to the Trustee's cause of action for breach of contract. Accordingly, the Trustee asked the court to clarify its prior order to provide that red yarn evidence could be offered for other purposes – for example, to show that the Toyobo Defendants knew of problems in the production of Zylon fiber and that they failed to disclose that information to customers such as Second Chance.   Extensive oral argument on the Motion for Clarification was held on January 21, 2010. The legal memoranda submitted by the parties were also reviewed.  At the conclusion of oral argument, the court took the matter under advisement.

## III.  ISSUE.

The issue presented is whether this court's prior order regarding admissibility of evidence relating to red yarn should be clarified to provide that the Trustee may offer red yarn evidence for purposes other than to prove breach of contract or breach of warranty without first making a showing that Second Chance received red yarn and used red yarn in its manufacture of bullet resistant vests.

4

## IV. DISCUSSION.

The Federal Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" FED. R. EVID. 401. "Relevancy is the threshold determination in any decision regarding the admissibility of evidence; if evidence is not relevant, it is not admissible." *Koloda v. General Motors Parts Division, General Motors Corp.*, 716 F.2d 373 (6th Cir. 1983) (citing FED. R. EVID. 402); *see* Memorandum Opinion Regarding Evidentiary Issues at 24-25.

The relevance of a particular type of evidence may depend "not only on the character of the evidence itself but on the purpose for which it is offered." *Koloda*, 716 F.2d at 375. For example, in a somewhat analogous products liability context, the Sixth Circuit Court of Appeals has held that "evidence of similar incidents is inadmissible for the purpose of demonstrating the cause of a specific occurrence." *Id.* at 375 n.2 (citing *Olin-Mathieson Chemical Co. v. Allis-Chalmers Mfg. Co.*, 438 F.2d 833 (6th Cir. 1971)). Such evidence may, however, be relevant to prove the existence of a product's dangerous propensities or to prove notice or knowledge of the danger. *Id.* at 375 (citing *McCormick's Handbook of the Law of Evidence* § 200 (2d ed. 1972)) (additional citation omitted). Therefore, it is necessary for the court to revisit the possible relevancy of red yarn evidence in light of the differing purposes for which it may be offered.

### A. Relevance of Red Yarn to Breach of Contract and Warranty Claims.

With regard to the Trustee's claims for breach of contract and breach of warranty, Toyobo's alleged production of and problems with red yarn are immaterial unless the

5

Trustee can prove that Second Chance received fabric containing the defective fibers and actually used the fabric in its bullet resistant vests. Absent such a showing, the alleged production of red yarn is not "of consequence" to the Trustee's breach of contract and warranty claims. Accordingly, the court reiterates its original determination that evidence relating to red yarn is irrelevant to the Trustee's breach of contract and warranty claims unless the Trustee first establishes that Second Chance received fabric containing red yarn and that such fabric was used in production of its bullet resistant vests.

The court notes that, based on the testimony and exhibits in evidence so far, it appears highly unlikely the Trustee will be able to make the requisite showing. At trial on January 22, 2010, the court permitted the Trustee and Toyobo to question Thomas (Ed) Bachner, former Vice President of Technology and Product Development at Second Chance, about red yarn. FED. R. EVID. 104(a). Bachner testified that Second Chance received Zylon fabric containing red yarn from at least two weavers, Hexcel and Lincoln Fabrics, but unequivocally stated that, to his knowledge, Second Chance's vigilant quality control procedures prevented the red yarn from ever being used in a Second Chance vest.[1] See Unofficial Trial Transcript, January 22, 2010, at 159-68. Bachner explained, however, that the discovery of red yarn in the Zylon fabric prompted discussions with Toyobo about the occurrence of red yarn, its physical properties, and what was being done to prevent it. Id. at 160-62.

---

[1] According to Bachner's testimony, the fabric that contained red yarns was rejected by Second Chance, quarantined and "sent back to the weavers for credit." Unofficial Trial Transcript, January 22, 2010, at 166.

### B. *Possible Relevancy of Red Yarn to Fraud Claims*.

The Trustee's fraud claims require a separate analysis. In general, to establish a cause of action for fraud, the Trustee must show that: (1) the Toyobo Defendants made a material misrepresentation; (2) the representation was false; (3) the representation was known to be false when made, or was made recklessly, without any knowledge of its truth, and as a positive assertion; (4) the representation was made with the intent that it should be acted upon by Second Chance; (5) Second Chance acted in reliance upon it; and (6) Second Chance suffered injury as a result. *See, e.g., Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Because Michigan law recognizes that "[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood," the Trustee has also asserted a cause of action for "silent fraud." *See M&D, Inc. v. McConkey*, 585 N.W.2d 33, 37 (Mich. App. 1998) (quoting *Lorenzo v. Noel*, 522 N.W.2d 724, 725 (1994)) (additional citations omitted). To establish his claim for silent fraud, the Trustee must show that the Toyobo Defendants concealed or suppressed a material fact about Zylon which they were duty-bound to disclose, thereby causing damage to Second Chance. *Id.*

There are many circumstances that may give rise to a duty to disclose in a commercial transaction. *See, e.g., M&D, Inc.*, 585 N.W.2d at 38 (A vendor has a duty to disclose material facts "when the vendor and purchaser have generally discussed the condition at issue . . . and the seller fails to fully disclose the material facts within the seller's knowledge related to the condition and the buyer detrimentally relies upon the resulting misdirection" or when the vendor acquires "information which he recognizes as

7

rendering untrue, or misleading, previous representations which, when made, were true or believed to be true.") (citations and emphasis omitted); *see generally Restatement (Second) of Torts* § 551 (1977).   At this stage in this adversary proceeding, it is not now possible for the court to determine whether the Toyobo Defendants had a duty to disclose information regarding Zylon's potential problems to Second Chance.  This court believes that the concept of "duty" is elastic, the existence of which will require consideration of all facts in evidence at the conclusion of trial.

The court believes, however, that the Trustee's fraud claims – particularly whether a duty to disclose existed and whether disclosures made by Toyobo satisfied this duty – are dependent in large part on Toyobo's *knowledge* (or lack thereof) of Zylon's alleged shortcomings.  In the first ten days of trial, the Trustee has offered evidence, much of it excavated from Toyobo's own documents and witnesses, that Toyobo knew of production difficulties and resultant potential problems with Zylon.  For example, based only upon the evidentiary record thus far, by at least the summer of 2001, Toyobo scientists were observing decreased tensile strength in Zylon as a result of certain conditions of high heat and humidity.  Toyobo scientists were preliminarily discussing whether this strength reduction could be related to hydrolysis and the Na/P ratio in the fiber.  The documents also contain references to production "instabilities" experienced in the spring and summer of 2001.  The occurrence of red yarn appears to be one of several difficulties Toyobo encountered in the manufacture of Zylon fiber.

Therefore, although the court stands by its original determination that red yarn evidence is irrelevant to the Trustee's breach of contract and breach of warranty claims *unless* Second Chance actually received and used fabric containing the red yarn, the court

8

concludes that evidence relating to red yarn may be relevant to show Toyobo's knowledge of production problems with Zylon fiber and the physical properties of fiber it was shipping to customers, including Second Chance.  *Cf. Koloda*, 716 F.2d at 377 (in products liability context, evidence of similar incidents may be relevant to show knowledge of a product's dangerous propensities).  *Assuming* Toyobo's knowledge gave rise to a duty to disclose, red yarn evidence may also be extremely relevant to determine whether disclosures made by Toyobo to Second Chance were sufficient to satisfy this duty.  Evidence relating to red yarn shall be admitted for these purposes.

## V.  CONCLUSION.

For the foregoing reasons, the Trustee's Motion for Clarification is GRANTED. Based upon the reasoning above, the Trustee's request to admit evidence regarding "red yarn" is GRANTED in part and DENIED in part.  A separate order shall be entered accordingly.

Dated this 27th day of January, 2010
at Grand Rapids, Michigan

Honorable James D. Gregg
Chief United States Bankruptcy Judge

9